UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JOSHUA SISCO                                                                        Plaintiff

v.

                                                              Case No _3:21cv059_-MPM-RP

UNIVERSITY OF MISSISSIPPI, and
GLENN BOYCE                                                             Defendants

---

## COMPLAINT

---

The plaintiff, by and through undersigned counsel, alleges as follows:

### PRELIMINARY STATEMENT

1.  This case involves disability-based discrimination by the University of Mississippi against one its students, who is deaf. Despite repeated complaints by the Plaintiff to Student Disability Services and to the Director of Equal Opportunity and Regulatory Compliance, the university refuses to caption its social media videos, including videos posted on the school's official accounts and accounts belonging to various sports programs. As a result, the Plaintiff is deprived of equal enjoyment of the university's programs and activities.

2.  The University of Mississippi also refuses to enable captions on the televisions located in its common areas, including its dining areas.

3.  In addition, the Plaintiff received a poor grade in one of his classes, because the professor tested material from videos played in class that were not captioned, meaning that the Plaintiff could not follow along and thus performed poorly on exams. Despite the Plaintiff's repeated complaints to the school, the professor played four uncaptioned videos in class.

## JURY TRIAL DEMANDED

4. This is a civil action for declaratory relief, injunctive relief, equitable relief, and monetary damages to redress disability-based discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*., and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 794, 42 U.S.C. § 12132, and 28 U.S.C. § 1331.

6. Venue is proper in the Northern District of Mississippi pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

## PARTIES

7. Plaintiff, Joshua Sisco, is a resident of Mississippi.

8. Plaintiff has a "disability," as defined by 42 U.S.C. § 12102 and 29 U.S.C. § 705(20).

9. Plaintiff is a "person aggrieved" under 29 U.S.C. § 794a(a)(2) and a "person alleging discrimination on the basis of disability" under 42 U.S.C. § 12133.

10. Defendant University of Mississippi—aka Ole Miss—is a public university in Oxford, Mississippi.

11. Defendant Glenn Boyce is the Chancellor of Ole Miss and resident of Mississippi. As such, he is the highest administrative official at the university. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

### *Background Information*

12. Joshua Sisco, the plaintiff in this case, is deaf.

13. Mr. Sisco was diagnosed at a young age with profound hearing loss.

14. Mr. Sisco was raised by his mother, who is also deaf, and Mr. Sisco's first language is American Sign Language (ASL).

15. Although originally from South Carolina, Mr. Sisco has been a diehard fan of Ole Miss athletics since 2012, particularly of Ole Miss football.

16. Mr. Sisco attended Ole Miss as an undergraduate between 2015 and 2020.

17. Because of his status as an out-of-state student, Mr. Sisco paid a substantial amount of money in tuition to attend Ole Miss.

18. As an undergraduate, Mr. Sisco had season tickets to Ole Miss football games every year except one.

19. Mr. Sisco is also an Ole Miss basketball fan. Though he has never had season tickets to the basketball games, he attends many of the games and has friends who are managers for the team.

20. The Pavilion is Ole Miss's basketball arena. It has a food court area where students often eat lunch. Mr. Sisco enjoys eating lunch at this facility.

21. NewsWatch is Ole Miss's student-run TV news station, which airs on the university's cable news system, as well as online.

22. For most of Mr. Sisco's time at Ole Miss, NewsWatch was not captioned.

23. Mr. Sisco obtained his undergraduate degree in history in spring, 2020.

24. After graduating in 2020, Mr. Sisco began a graduate program at Ole Miss called "Teach Mississippi Institute." He withdrew from this program in 2021.

25. Ole Miss has numerous social media accounts on various platforms, including Facebook, Twitter, and Instagram.

26. Ole Miss's Athletics Department has its own social media accounts, as do various sports programs within the department.

27. Mr. Sisco enjoys following Ole Miss sports on various social media platforms, including Facebook, Twitter, and Instagram. In particular, he's a fan of "The Season," a reality show

that shows behind-the-scenes footage of Ole Miss's football team and is featured on Facebook, Instagram, and YouTube.

***Accessibility issues raised in this complaint.***

28. During Mr. Sisco's time at Ole Miss, the university consistently failed to make many of its programs accessible to people with hearing impairments. In this complaint, Mr. Sisco complains of three issues.

29. First, very few of the videos posted to Ole Miss's official social media accounts are captioned, making it impossible for Ms. Sisco to know what is being said in these videos.

30. In particular, the social media accounts associated with Ole Miss Athletics and Ole Miss's various sports teams feature videos that are rarely, if ever, captioned.

31. Second, Mr. Sisco has consistently encountered TVs in the common areas of the school, including The Pavilion, which do not have captions enabled.

32. There are large televisions in the Pavilion, usually tuned to ESPN. But during Mr. Sisco's time at Ole Miss, the TVs were generally not captioned.

33. Mr. Sisco repeatedly complained, to no avail, to Student Disability Services that the Pavilion TVs were not set with captioning. After several complaints, the TVs in the Pavilion were finally captioned, but it lasted only for about a week. Apparently, students were complaining about the captions, and the captions were taken off.

34. Third, Mr. Sisco had an issue in his Chinese history class, in which a professor repeatedly played uncaptioned videos in class, and the tests and quizzes were based, in part, on the material covered in these videos.

35. Between 2017 and 2019, Mr. Sisco met three times with Becki Bressler, Ole Miss's Director of Equal Opportunity and Regulatory Compliance.

36. Corey Blount, who works as an assistant director and ASL translator for Student Disability Services at Ole Miss, was present at all three meetings with Ms. Bressler.

37. In or around 2017, Mr. Sisco met with Ms. Bressler the first time. At this meeting, Mr. Sisco raised several issues, including: (a) the lack of captioning for videos posted on Ole Miss's various social media accounts, including the football team's social media accounts, the basketball team's social media accounts, and Ole Miss Athletics' social media accounts; and (b) the lack of captioning for NewsWatch.

38. At the meeting, Ms. Bressler promised to address these concerns. Despite this promise, the problems persisted.

39. In or around 2018, Mr. Sisco again met with Ms. Bressler to complain that the issues he raised in their first meeting still had not been addressed. Again, she promised to address these issues, but, again, they remained unaddressed.

40. On April 1, 2019, Sisco met with Ms. Bressler a third time. In addition to Mr. Blount and Ms. Bressler, a campus translator named Ronda Bryan was present at this meeting.

41. At the third meeting, Mr. Sisco again raised the same two issues he raised during the first meeting. But he also raised two additional issues.

42. The first additional issue Mr. Sisco raised at the third meeting with Ms. Bressler was the lack of captioning in The Pavilion.

43. The second additional issue he raised at this meeting was the lack of captioning for videos played in his Chinese history class, in which he was then enrolled (in the spring of 2019).

44. Starting with the first week of class, Mr. Sisco's Chinese history professor, Dr. Joshua Howard, repeatedly played videos in class that were not captioned.

45. Dr. Howard tested material from these videos on quizzes and exams.

46. Before the semester began, Student Disability Services instructed Dr. Howard that, because there was a deaf student in the class, he needed to obtain captions for any videos played in class.

47. Dr. Howard was further instructed that, if he gave a copy of the video to Student Disability Services with sufficient advanced notice, the department could caption the video for him.

48. During the first week of class, Dr. Howard showed a video that was not captioned.

49. After this first incident, Mr. Sisco complained to Student Disability Services, who contacted Dr. Howard to admonish him to ensure any videos played in class have captions.

50. Despite this admonishment, Dr. Howard again played a video in class that wasn't captioned. Again, Mr. Sisco complained, and again Student Disability Services contacted Dr. Howard to admonish him.

51. This happened a third time in class. Again, Mr. Sisco complained, and again Dr. Howard was admonished. This time, Dr. Howard was also admonished by the head of the history department.

52. Dr. Howard then played an uncaptioned video in class a *fourth* time—this time for an after-hours extra-credit opportunity.

53. In advance of the extra-credit opportunity, Mr. Sisco had emailed Dr. Howard and asked that he please be sure to caption the video. However, the video was not captioned.

54. Dr. Howard instructed his students to write a paper on the video, but Mr. Sisco was unable to write the paper, because the video was not captioned. He therefore was deprived of the opportunity to earn extra credit.

55. Mr. Sisco's third meeting with Ms. Bressler (on April 1, 2019) took place shortly after this fourth incident, and Mr. Sisco complained about this issue to Ms. Bressler.

56. Ms. Bressler apparently spoke with Dr. Howard, and the fifth video that he played in class was captioned. But by this time, there was only about three weeks left in the semester.

57. Because Mr. Sisco missed so much information in class, he earned a C in the course.

58. Mr. Sisco's grade in Chinese history brought down his GPA, which in turn harmed his prospects of obtaining a good job and/or earning admission into a competitive graduate program.

59. After his third meeting with Ms. Bressler, Mr. Sisco was frustrated that his concerns were not being addressed. So he filed a complaint with the Department of Education's Office of Civil Rights (OCR) on April 9, 2019.

60. After OCR began investigating the issues raised in his complaint, NewsWatch finally began captioning its programming. OCR did not obtain any other relief for Mr. Sisco.

61. On January 8, 2020, Mr. Sisco filed a second OCR complaint, raising substantially the same concerns as his first OCR complaint.

62. Mr. Sisco withdrew his OCR complaint after obtaining private counsel in October 2020.

63. To this day, the same problems persist—namely, lack of captioning in the Pavilion, and lack of captioning for videos posted to Ole Miss social media accounts.

### FIRST CLAIM – Disability Discrimination (Section 504 of the Rehabilitation Act)

64. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

65. Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because Ole Miss is a recipient of federal funds, and it discriminated against Plaintiff solely on the basis of his disability.

66. Defendants treated Plaintiff less favorably because of his disability.

67. Defendants failed to provide Plaintiff with reasonable accommodations.

68. Defendants' practices or policies have a negative and disparate impact on people with hearing impairments.

69. The discriminatory actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

70. Plaintiff suffered injuries as a result of Defendants' conduct.

## SECOND CLAIM – Disability Discrimination (ADA)

71. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

72. Defendants violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, because Ole Miss is a public entity that discriminated against Plaintiff on the basis of his disability.

73. Defendants treated Plaintiff less favorably because of his disability.

74. Defendants failed to provide Plaintiff with reasonable accommodations.

75. Defendants' practices or policies have a negative and disparate impact on people with hearing impairments.

76. The discriminatory actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

77. Plaintiff suffered injuries as a result of the Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that Defendants' conduct as set forth above violates 29 U.S.C. § 794, 42 U.S.C. § 12132.

2. Entering an injunction directing that Defendants and their officers, directors, agents, employees and successors, and all other persons in active concert or participation with

Defendants, take all affirmative steps necessary to remedy the illegal, discriminatory conduct alleged herein and to prevent similar occurrences in the future;

3. Awarding compensatory damages to Plaintiff for injuries caused by Defendants' discriminatory conduct pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, and any other applicable provisions.

4. Awarding nominal damages to Plaintiff for injuries caused by Defendants' discriminatory conduct pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, and any other applicable provisions.

5. Awarding punitive damages to Plaintiff for injuries caused by Defendants' discriminatory conduct pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, and any other applicable provisions.

6. Awarding costs and attorney's fees to Plaintiff, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, and any other applicable provisions;

7. Requiring that Defendants put into place policies and training to prevent future violations;

8. Equitable relief in the form of raising Plaintiff's grade in Chinese history;

9. Equitable relief in the form of restitution, namely, a partial reimbursement of tuition that Plaintiff paid to the school;

10. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which he is entitled.

## WAIVER OF SERVICE

Consistent with Rule 4(d) of the Federal Rules of Civil Procedure, Plaintiff intends to seek a waiver of service of the complaint.

Respectfully submitted,

March 19, 2021

*/s/ Mike Farrell*
Mike Farrell
Miss. Bar # 5147
Mike Farrell, PLLC
Regions Plaza, Suite 1088
210 Capitol Street Jackson, MS 39201
601-948-8030 Tel
mike@farrell-law.net


Chris Edmunds, LBSA 37670
Chris Edmunds Law Office
4937 Hearst St., Suite 2F
Metairie, LA 7001
504-314-0034
chrisedmundslaw@gmail.com

PRO HAC MOTION TO BE FILED