**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

JOSHUA SISCO,

    Plaintiff,

v.

UNIFIED OF MISSISSIPPI, and
GLENN BOYCE.

    Defendants.

Case No 3:21-cv-059-DMB-RP

Jury Demanded

# FIRST AMENDED COMPLAINT

Plaintiff, by and through undersigned counsel, alleges as follows:

**PRELIMINARY STATEMENT**

1. This case involves disability-based discrimination by the University of Mississippi against one its students, who is deaf. Despite repeated complaints by the Plaintiff to Student Disability Services and to the Director of Equal Opportunity and Regulatory Compliance, the university refuses to caption its social media videos, including videos posted on the school's official accounts and accounts belonging to various sports programs. As a result, the Plaintiff is deprived of equal enjoyment of the university's programs and activities.

2. The University of Mississippi also refuses to enable captions on the televisions located in its common areas, including its dining areas.

3. In addition, one of the Plaintiff's professors repeatedly played videos in class that were not captioned and tested the material, meaning that the Plaintiff could not follow along with the videos and thus performed poorly on exams. Despite the Plaintiff's repeated complaints to the school, the professor played four uncaptioned videos in class. This had a negative impact on the Plaintiff's overall GPA and job prospects.

4. This is a civil action for declaratory relief, injunctive relief, equitable relief, and monetary damages to redress disability-based discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*., and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 794, 42 U.S.C. § 12132, and 28 U.S.C. § 1331.

6. Venue is proper in the Northern District of Mississippi pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

## PARTIES

7. Plaintiff, Joshua Sisco, is a resident of Mississippi.

8. Plaintiff has a "disability," as defined by 42 U.S.C. § 12102 and 29 U.S.C. § 705(20).

9. Plaintiff is a "person aggrieved" under 29 U.S.C. § 794a(a)(2) and a "person alleging discrimination on the basis of disability" under 42 U.S.C. § 12133.

10. Defendant University of Mississippi—aka Ole Miss—is a public university in Oxford, Mississippi that receives federal funding.

11. Defendant Glenn Boyce is the Chancellor of Ole Miss and resident of Mississippi. As such, he is the highest administrative official at the university. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

*Background Information*

12. Joshua Sisco, the plaintiff in this case, is deaf.

13. Mr. Sisco was diagnosed at a young age with profound hearing loss.

14. Mr. Sisco was raised by his mother, who is also deaf, and Mr. Sisco's first language is American Sign Language (ASL).

2

15. Although originally from South Carolina, Mr. Sisco has been a diehard fan of Ole Miss athletics since 2012, particularly of Ole Miss football.

16. Mr. Sisco attended Ole Miss as an undergraduate between 2015 and 2020.

17. Because of his status as an out-of-state student, Mr. Sisco paid a substantial amount of money in tuition to attend Ole Miss.

18. Mr. Sisco was originally an education major, but he later decided to minor in education instead and switched his major to history.

19. As an undergraduate, Mr. Sisco had season tickets to Ole Miss football games every year except one.

20. Though he did not attend any games during the COVID-19 pandemic, he plans to attend games during the 2021 football season.

21. Mr. Sisco is also an Ole Miss basketball fan. Though he has never had season tickets to the basketball games, he attends many of the games and has friends who are managers for the team.

22. Mr. Sisco obtained his undergraduate degree in history in spring, 2020.

23. After graduating in 2020, Mr. Sisco began a graduate program at Ole Miss called "Teach Mississippi Institute." He withdrew from this program in 2021.

24. Captioning is a well-known and easily provided accessibility feature for video content.

25. Captions generally appear at the bottom of the screen and produce in written form information that cannot be ascertained by someone with a hearing impairment, such as dialogue, sound effects, or music.

26. Ole Miss has the full capability of adding captions to any and all video content, including videos it uploads to social media or videos that are to be displayed in a classroom setting.

27. Ole Miss also has the full capability of enabling captions on television sets for TV programming produced and provided by third parties, such as cable or satellite providers.

28. During Mr. Sisco's time at Ole Miss, the university consistently failed to make many of its programs accessible to people with hearing impairments. In this complaint, Mr. Sisco complains of four issues in particular.

*First accessibility issue: failure to caption social media videos*

29. Very few of the videos posted to Ole Miss's official social media accounts are captioned, making it impossible for Ms. Sisco to know what is being said in these videos.

30. In particular, the social media accounts associated with Ole Miss Athletics and Ole Miss's various sports teams feature videos that are rarely, if ever, captioned.

31. Ole Miss has created numerous social media accounts on various platforms, including Facebook, Twitter, and Instagram.

32. Ole Miss's Athletics Department has its own social media accounts, as do various sports programs within the department.

33. Ole Miss, its Athletic Departments, and various sports programs upload content, such as videos and photographs, to these social media platforms.

34. Although Ole Miss has no control over the policies and practices of these social media platforms, Ole Miss has full control over the content it uploads to these platforms.

35. Ole Miss has the full capability of adding captions to any video it posts to social media.

36. Such videos include (but are not limited too) promotional videos, press conferences, and interviews with players.

37. Mr. Sisco enjoys following Ole Miss sports on various social media platforms, including Facebook and Instagram.

4

38. Mr. Sisco is denied full enjoyment of the videos posted to these platforms, because Ole Miss and its athletic teams do not caption the videos, so he does not understand what is being said in the videos.

39. For example, Ole Miss produces a series called "The Season," a reality show that shows behind-the-scenes footage of Ole Miss's football team, basketball team, and baseball team. "The Season" is featured on Ole Miss's various social media pages. Because "The Season" is not captioned, Mr. Sisco has been unable to follow along with the series.

40. In addition, one of Mr. Sisco's friends narrated a motivational video leading up to the Ole Miss football game against the University of Alabama in October 2020, but Mr. Sisco was unable to follow along, because the video was not captioned.

41. As explained in more detail below, Mr. Sisco repeatedly complained to Ole Miss about the lack of captioning for Ole Miss's social media videos, but the problem was never addressed.

42. Ole Miss's social media accounts are a "program, service, or activity" under the Americans with Disabilities Act and Rehabilitation Act.

43. Ole Miss acted with deliberate indifference in failing to caption its social media videos.

*Second accessibility issue: failure to caption TVs in common areas*

44. Mr. Sisco has consistently encountered accessibility issues with TVs in the common areas of the school.

45. The Pavilion is Ole Miss's basketball arena. It has a food court area where students often eat lunch. Mr. Sisco enjoys eating lunch at this facility.

46. There are large televisions in the Pavilion, usually tuned to ESPN, with the volume turned on. But during Mr. Sisco's time at Ole Miss, the TVs were generally not captioned, so he could not understand what was being said.

5

47. Ole Miss has full control over the TVs in the Pavilion.

48. Television providers, such as cable and satellite providers, are required to provide closed captioning for the vast majority of their programming, which can be enabled by the consumer through the remote control or television menu.

49. Mr. Sisco repeatedly complained, to no avail, to Student Disability Services that the Pavilion TVs were not set with captioning. After several complaints, Ole Miss staff finally enabled the captions, but it lasted only for about a week. Apparently, students were complaining about the captions, and Ole Miss staff disabled the captions.

50. The TVs in the Pavilion were no longer captioned after that.

51. "The Pod" is a common area within Ole Miss's Education Department. Snacks and drinks are served in The Pod, and there is a TV in The Pod.

52. The TV in The Pod played videos of students announcing important dates and events. This programming was produced by Ole Miss. The programming was not captioned, so Mr. Sisco could not understand what was being said on the TV in The Pod.

53. As an education major (and later an education minor), Mr. Sisco complained repeatedly to Student Disability Services, to no avail, about the lack of captioning on the TV in The Pod.

54. The TVs provided in the common areas of Ole Miss are a "program, service, or activity" under the Americans with Disabilities Act and Rehabilitation Act.

55. In failing to caption its programming or enable TV captions for third-party programming, Ole Miss acted with deliberate indifference to Mr. Sisco's disability-related needs.

*Third accessibility issue: NewsWatch not captioned*

56. NewsWatch is Ole Miss's student-run TV news station.

57. Programming on NewsWatch is produced by Ole Miss students under the supervision of Ole Miss faculty.

58. NewsWatch produces approximately two 15-minute programs each week.

59. These programs are aired on Ole Miss's university cable system and on a local cable TV channel.

60. NewsWatch programs are also aired online, including on social media and on the NewsWatch website.

61. Mr. Sisco tried to watch NewsWatch several times on Facebook, but he could not understand what was being said because the program was not captioned.

62. Despite Mr. Sisco's repeated complaints to Ole Miss, NewsWatch was not captioned for the vast majority of Mr. Sisco's time as a student.

63. NewsWatch is a "program, service, or activity" under the Americans with Disabilities Act and Rehabilitation Act.

64. In failing to caption NewsWatch, Ole Miss acted with deliberate indifference to Mr. Sisco's disability-related needs.

*Fourth accessibility issue: uncaptioned videos in Chinese history class*

65. In the spring semester of 2019, Mr. Sisco's Chinese history professor repeatedly played uncaptioned videos in class, and the tests and quizzes were based, in part, on the material covered in these videos.

66. Starting with the first week of class, Mr. Sisco's Chinese history professor, Dr. Joshua Howard, repeatedly played videos in class that were not captioned.

67. Dr. Howard tested material from these videos on quizzes and exams.

7

68. Before the semester began, Student Disability Services instructed Dr. Howard that, because there was a deaf student in the class, he needed to obtain captions for any videos played in class.

69. Dr. Howard was further instructed that, if he gave a copy of the video to Student Disability Services with sufficient advanced notice, the department could caption the video for him.

70. During the first week of class, Dr. Howard showed a video that was not captioned.

71. After this first incident, Mr. Sisco complained to Student Disability Services, who contacted Dr. Howard to admonish him to ensure that any videos played in class have captions.

72. Despite this admonishment, Dr. Howard again played a video in class that wasn't captioned. Again, Mr. Sisco complained, and again Student Disability Services contacted Dr. Howard to admonish him.

73. This happened a third time in class. Again, Mr. Sisco complained, and again Dr. Howard was admonished. This time, Dr. Howard was also admonished by the head of the history department.

74. Dr. Howard then played an uncaptioned video in class a *fourth* time—this time for an after-hours extra-credit opportunity.

75. In advance of the extra-credit opportunity, Mr. Sisco had emailed Dr. Howard and asked that he please be sure to caption the video. However, the video was not captioned.

76. Dr. Howard instructed his students to write a paper on the video, but Mr. Sisco was unable to write the paper, because the video was not captioned. He therefore was deprived of the opportunity to earn extra credit.

77. Again, Mr. Sisco complained about the lack of captioning. Thereafter, the Director of Equal Opportunity and Regulatory Compliance spoke with Dr. Howard, and the fifth video that he

8

played in class was captioned. But by this time, there was only about three weeks left in the semester.

78. Because Mr. Sisco missed so much information in class, he earned a C in the course.

79. Mr. Sisco's grade in Chinese history brought down his GPA, which in turn harmed his prospects of obtaining a good job and/or earning admission into a competitive graduate program.

80. Ole Miss did not reprimand Dr. Howard in any way for his repeated failure to play accessible videos in class.

81. Dr. Howard's persistent failure to play captioned videos was a result of improper accessibility training by Ole Miss.

82. Classes provided at Ole Miss are a "program, service, or activity" under the Americans with Disabilities Act and Rehabilitation Act.

83. Dr. Howard acted with deliberate indifference to Mr. Sisco's disability-related needs.

*Meetings with Becki Bressler*

84. Between 2017 and 2019, Mr. Sisco met three times with Becki Bressler, Ole Miss's Director of Equal Opportunity and Regulatory Compliance.

85. Corey Blount, who works as an assistant director and ASL translator for Student Disability Services at Ole Miss, was present at all three meetings with Ms. Bressler.

86. In or around 2017, Mr. Sisco met with Ms. Bressler the first time.

87. At this first meeting, Mr. Sisco raised several issues, including: (a) the lack of captioning for videos posted on Ole Miss's various social media accounts, including the football team's social media accounts, the basketball team's social media accounts, and Ole Miss Athletics' social

9

media accounts; (b) the lack of captioning for NewsWatch; and (c) the lack of captioning for the TV in The Pod in the Education Department.

88. At the meeting, Ms. Bressler promised to address these concerns.

89. Despite this promise, the problems persisted.

90. In or around 2018, Mr. Sisco again met with Ms. Bressler to complain that the issues he raised in their first meeting still had not been addressed. Again, she promised to address these issues, but, again, they remained unaddressed.

91. On April 1, 2019, Sisco met with Ms. Bressler a third time. In addition to Mr. Blount and Ms. Bressler, a campus translator named Ronda Bryan was present at this meeting.

92. At the third meeting, Mr. Sisco again raised the same three issues he raised during the first meeting. But he also raised two additional issues.

93. The first additional issue Mr. Sisco raised at the third meeting with Ms. Bressler was the lack of captioning in The Pavilion.

94. The second additional issue he raised at this meeting with Ms. Bressler was the lack of captioning for videos played in his Chinese history class.

95. After his third meeting with Ms. Bressler, Dr. Howard finally began captioning his videos in class, but there was only a short period of time left in the semester.

96. Mr. Sisco remained frustrated that his other concerns were not being addressed. So he filed a complaint with the Department of Education's Office of Civil Rights (OCR) on April 9, 2019.

97. After OCR began investigating the issues raised in his complaint, NewsWatch finally began captioning its programming. OCR did not obtain any other relief for Mr. Sisco.

98. On January 8, 2020, Mr. Sisco filed a second OCR complaint, raising substantially the same concerns as his first OCR complaint.

99. Because of OCR's substantial delay in investigating his claims, Mr. Sisco withdrew his OCR complaint after obtaining private counsel in October 2020.

100. To this day, the same problems persist—namely, lack of captioning in the Pavilion, and lack of captioning for videos posted to Ole Miss social media accounts.

101. Despite the fact that he is no longer a student, Mr. Sisco is a still a diehard fan of Ole Miss athletics and wishes to follow Ole Miss's sports programs on social media.

102. As a public entity, Ole Miss has a duty to makes its social media videos and common areas accessible to the general public, not merely to students.

### FIRST CLAIM – Disability Discrimination (Section 504 of the Rehabilitation Act)

103. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

104. Defendant violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because it is a recipient of federal funds, and it discriminated against Plaintiff solely on the basis of his disability.

105. Defendants treated Plaintiff less favorably because of his disability.

106. Defendants failed to provide Plaintiff with reasonable accommodations.

107. Defendants' practices or policies have a negative and disparate impact on people with hearing impairments.

108. The discriminatory actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

109. Plaintiff suffered injuries as a result of Defendants' conduct.

### SECOND CLAIM – Disability Discrimination (ADA)

110. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

111. Defendants violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, because Ole Miss is a public entity that discriminated against Plaintiff on the basis of his disability.

112. Defendants treated Plaintiff less favorably because of his disability.

113. Defendants failed to provide Plaintiff with reasonable accommodations.

114. Defendants' practices or policies have a negative and disparate impact on people with hearing impairments.

115. The discriminatory actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

116. Plaintiff suffered injuries as a result of the Defendants' conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that Defendants' conduct as set forth above violates 29 U.S.C. § 794 and 42 U.S.C. § 12132;

2. Entering an injunction directing that Defendants and their officers, directors, agents, employees and successors, and all other persons in active concert or participation with Defendants, take all affirmative steps necessary to remedy the illegal, discriminatory conduct alleged herein and to prevent similar occurrences in the future;

3. Awarding compensatory damages to Plaintiff for injuries caused by Defendants' discriminatory conduct pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, and any other applicable provisions;

4. Awarding nominal damages to Plaintiff for injuries caused by Defendants' discriminatory conduct pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, and any other applicable provisions.

12

5. Awarding punitive damages to Plaintiff for injuries caused by Defendants' discriminatory conduct pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, and any other applicable provisions.

6. Awarding costs and attorney's fees to Plaintiff, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, and any other applicable provisions;

7. Requiring that Defendants put into place policies and training to prevent future violations;

8. Equitable relief in the form of raising Plaintiff's grade in Chinese history;

9. Equitable relief in the form of restitution, namely, a partial reimbursement of tuition that Plaintiff paid to the school;

10. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which he is entitled.

Respectfully submitted,

June 21, 2021

__/s/ *Chris Edmunds*_____

Chris Edmunds
Chris Edmunds Law Office
LA Bar No 37670
4937 Hearst St., Suite 2F
Metairie LA 70001
504-314-0034

__/s/ *Mike Farrell*_____

Mike Farrell
Miss. Bar # 5147
Mike Farrell, PLLC
Regions Plaza, Suite 1088
210 Capitol Street Jackson, MS 39201
601-948-8030 Tel
601-948-8032 Fax