IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JOSHUA SISCO                                                      PLAINTIFF

V.                                                Case No.:  3:21cv059-DMB-RP

UNIVERSITY OF MISSISSIPPI and GLENN BOYCE                    DEFENDANTS

**REBUTTAL IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

In response, Sisco often fails to meet the substance of Defendants' arguments, over-relies on strained citations, and rests on caselaw unrelated to the issues at hand. His claims should be dismissed for the reasons stated both in Defendants' principal brief and this rebuttal.

### *1. Sisco's social media allegations fail to state a claim for relief.*

Sisco wrongly argues that the Department of Justice ("DOJ") has already decided that Title II applies to a government entity's posts on social media. *See* Pl.'s Resp. pp. 3, 10 [Doc. 20]. In fact, DOJ has for decades expressly ***declined*** to issue rules requiring web-based accessibility under Title II, and what little informal guidance DOJ has issued undermines the leap Sisco tries to make here. The administrative commentary he cites from is an excerpt of DOJ's explanation regarding its ***decision to omit web-based accessibility requirements from its formal rulemaking process***. *See* 28 CFR Part 35 App. A.[1] Accordingly, the comments Sisco paints as the "reasoned" and "authoritative" position of DOJ is part of its decision not to impose formal web-accessibility requirements for government websites. *Id*.

While those comments stated that DOJ "expect[ed] to engage in the rulemaking relating to website accessibility under the ADA in the near future," DOJ has never done so, and the

---

[1] Appendix A is DOJ "section-by-section analysis" of its revisions to its Title II regulations and explains that "[m]any commenters expressed disappointment that the [Notice of Proposed Rule Making for the 2010 amendments] ***did not require title II entities to make their Web sites, through which they offer programs or services, accessible to individuals with disabilities . . .*".

courts have had no formal administrative guidance to look to in terms of web-based accessibility requirements. *Id.*; s*ee also Price v. City of Ocala*, 375 F. Supp. 3d 1264, 1270 (M.D. Fla. 2019) (noting "complete lack of rules and regulations" from DOJ). Judicial deference to an agency determination, under either *Chevron* or *Auer*, requires that the agency have issued such a position, and neither doctrine is applicable here. *See Sorto-De Portillo v. Holder*, 358 F. App'x 606, 607 (5th Cir. 2010) (discussing separate standards of agency deference).

Even if the Court were to grant the commentary some persuasive effect under a less deferential standard, DOJ's commentary does not suggest Title II's requirements apply to a government entity's posts on a social media platform. *See Freeman v. Quicken Loans, Inc*., 626 F.3d 799, 805 (5th Cir. 2010) (explaining that regulatory interpretation that does not follow rule-making guidelines under APA may be granted *Skidmore* deference and given "respect proportional to its 'power to persuade.'"). The comments are instead aimed at "[government entities'] Web sites, through which they offer programs and services[,]" and the guidance provides that "an agency with an inaccessible Web site may also meet its legal obligations by providing an alternative accessible way for citizens to use the programs or services, such as a staffed telephone information line." 28 CFR Part 35 App. A (emphasis added).

Accordingly, DOJ's comments recognize that every internet post is not a government "service" or "activity," but is instead merely a channel by which a governmental entity might make such underlying government services or activities available to the public.[2] Further, an entity's own inaccessible website (much less content posted on Facebook, Instagram, or Twitter)

---

[2] Sisco implicitly recognizes this distinction. For purposes of his classroom video captioning claim, he identifies "classes" provided at the University as a "program, service, or activity," of the University rather than the mere "videos" played in those classes. *See* Pl.'s Resp. p. 9.

still does not necessarily give rise to an ADA violation, so long as the entity makes its underlying programs and activities accessible to disabled individuals by other means.

The other informal guidance issued by the DOJ to address web accessibility under Title II, a 2003 publication entitled, "*Accessibility of State and Local Government Web sites to People with Disabilities*," opines only that Title II's requirements apply to "**government websites.**"[3] That guidance document similarly does not contemplate the application of Title II to social media platforms owned and operated by third-party corporations. *Id*. It is instead aimed at an entity's own "website design" practices. *Id*. This guidance likewise undercuts Sisco's novel attempt to extend Title II to third-party social media platforms.

The University's argument is not that there is a "social media exception" to Title II, or that social media platforms are excluded from coverage merely because they are not referenced by statute, but that online content published on a third-party social media platform such as Instagram, Facebook, or Twitter is not a "service, program, or activity," of the government entity itself. That argument is supported by the DOJ's failure to issue any administrative guidance advocating Sisco's position, Sisco's failure to locate any federal case applying Title II in such manner, the Fifth Circuit's non-internet related caselaw, and the Eleventh Circuit's recent curtailing of web-based discrimination theories in the context of Title III. Sisco's novel allegations based on content posted to Facebook, Instagram, and Twitter do not state a claim for relief.

---

[3] Publicly available at https://www.ada.gov/websites2.htm. Like the comments accompanying DOJ's 2010 regulatory comments, these comments also were not formally promulgated as a departmental regulation, and the guidance expressly notes that it "is not intended to be a final agency action, has no legally binding effect," and does not "establish legally enforceable responsibilities beyond what is required by the terms of the applicable statutes, regulations, or binding judicial precedent." *Id*.

### *2. Sisco is not required to prove his claims, but he must plausibly plead them.*

Sisco takes an extremely narrow view of Rule 8, and bristles at the assertion that he must plead any facts as to the "merits" of his claims to plausibly state a claim under the ADA or the Rehab Act. Pl.'s Resp. p. 16; *but see Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) ("Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'"). But this is precisely the type of analysis the Fifth Circuit conducted in *Garrett v. Thaler*, where it affirmed dismissal of a plaintiff's complaint for failure to state a claim because plaintiff failed "to satisfy the second and third prongs of the Title II inquiry" and "did not plausibly allege that the prison failed to make reasonable accommodations for his vertigo." 560 F. App'x. 375, 381 (5th Cir. 2014).

Similarly, in *Price v. City of Ocala*, the court wrote that "if a plaintiff fails to allege what information is inaccessible, then the plaintiff failed to state a claim" because "the inaccessible information must relate to a government service, program, or activity to state a claim under Title II." 375 F. Supp. 3d 1264, 1274 n. 10 (M.D. Fla. 2019). The plaintiff there alleged he could not access all of a city's website because portions were incompatible with his screen reader, but the court observed that he had failed to state a claim under Title II because he "failed to allege what specific information was inaccessible to him on the City's website." *Id*. at 1277, 1277 n. 16.

Sisco must do more than generically assert that "very few" of unidentified videos posted on unidentified social media pages or profiles operated by unidentified University athletics programs or personnel are captioned, or merely that he was not provided his preferred auxiliary aid when several videos were played in his history class (without accompanying allegations that

he was excluded from the class because of an alleged denial), to state a plausible claim for relief.
Though he now argues he identified "specific video content that is inaccessible," Sisco's
complaint provides no allegations about when and where that content appeared, from which
University-related social media account it was posted, or, in the case of "The Season," which
episodes for which team were uncaptioned. Likewise, while Sisco concedes that his claims turn
on whether he was provided "reasonable accommodations that allowed [him] to access its
services," he artfully claims that several videos were played in his history class without (even
now) claiming that he was not provided an alternative auxiliary aid, such as a live interpreter,
which would have otherwise allowed him to participate. Sisco's threadbare facts and legal
conclusions do not plausibly state a claim for relief.

### 3. The CVAA bars Sisco's claims related to NewsWatch Ole Miss and The Season.

No court in this circuit appears to have considered whether the Twenty-First Century
Communications and Video Accessibility Act of 2010 ("CVAA") requires a plaintiff to
administratively exhaust a closed-captioning complaint before proceeding with an action under
the ADA or Rehab Act. While other out-of-circuit courts have declined to impose that
requirement, the contrary opinion of the U.S. District Court for the Southern District of Florida
in *Sierra v. School Board of Broward County* is more persuasive. 2017 U.S. Dist. LEXIS 62498,
*5 (S.D. Fl. Apr. 20, 2017).[4]

As explained by the court there, Congress initially passed the Telecommunications Act in
1996 "to secure better access to video programming for the hearing-impaired," and in 2010
enacted the CVAA "in response to the growing presence of video programming on the Internet."

---

[4] Sisco argues that this case was overruled by the Eleventh Circuit's recent opinion in *Sierra v. City of Hallandale Beach*, 996 F.3d 1110 (11th Cir. 2021), but the Eleventh Circuit declined to reach the underlying rationale of that decision. *Id*. at 1350 ("As Sierra relied exclusively on *Zulauf* and *Johnson* in conducting its analysis, we limit our discussion to those two cases.").

*Id*. at *5. The CVAA "amended the Telecommunications Act and directed the FCC to modify its regulations so as to impose closed-captioning requirements for certain video programming available over the Internet." *Id*. If an individual has a complaint regarding an alleged violation of the FCC's captioning requirements, the complaint must be filed with the FCC. *Id*.

Accordingly, the *Sierra* court required the plaintiff to exhaust his captioning-related complaints with the FCC before filing suit under the Rehab Act and the ADA because the CVAA was "Congress's most recent statement with regard to the application of closed captioning to Internet protocol-delivered video programming." *Id*. at *14. The court found that requiring administrative exhaustion accomplished the CVAA's intended purpose while also preserving the plaintiff's rights under the ADA and Rehab Act. *Id*.

Here, it does not matter that Sisco "tried to watch 'The Season' and NewsWatch on *Facebook*, not on TV." Pl.'s Resp. p. 18. In fact, Sisco's novel attempt to extend captioning requirements to video content on Facebook, Instagram, and Twitter by way of Title II and the Rehab Act, without supporting caselaw or administrative regulations, underscores the importance of Congress's decision to call upon the FCC to issue administrative regulations governing such issues and then vest that agency with the exclusive jurisdiction to address complaints regarding alleged violations. Sisco should be required to administratively exhaust his video captioning complaints with the FCC before suing under the ADA or Rehab Act.

### 4. Despite acknowledging that standing must be established on a claim-by-claim basis, Sisco fails to even argue that he has standing to pursue injunctive relief for all his claims.

Sisco asserts claims as to four unrelated alleged accessibility issues: 1) several uncaptioned videos played during or in relation to a Chinese history class he took, 2) uncaptioned TVs he saw in the University's School of Education and basketball arena during his enrollment, 3) uncaptioned student news programming broadcast during his early enrollment at

the University, and 4) content posted on Facebook, Instagram, and Twitter related to the University's athletics programs.

As to his common area TV claim, for which Sisco lacks standing to pursue *any* injunctive relief, Sisco relies on the Fifth Circuit's decision in *Crawford v. Hinds County Board of Supervisors*, 2021 U.S. App. LEXIS 18001, *1 (5th Cir. Jun. 16, 2021), a case decided in the context of the court's specific jury-service jurisprudence. There, the Fifth Circuit found that a Hinds County resident, who remained an active member of the Hinds County jury pool, had a "substantial risk of being called for jury duty" again, and therefore had standing "to seek an injunction against a systemic exclusionary practice but not a one-off, episodic exclusion related to a particular judge's actions." *Id*. at *9. Sisco's complaint does not relate to potential jury service, however, and the *Crawford* holding is inapposite. His claim should instead be governed by the standing inquiry applicable to ADA and Rehab Act claims. *See*, e.g., *Griffin v. Dep't. of Labor Fed. Credit Union*, 912 F.3d 649, 656 (4th Cir. 2019) (plaintiff could not "create standing in the absence of an otherwise plausible assertion" that he intends to return to the place at issue."). Sisco does not plausibly allege an intent to return to the School of Education building, or to the University's basketball arena to eat lunch. He implies he might return as a "fan" to the University's "common areas," but his allegations are based only on TVs purportedly encountered at the School of Education and non-gameday cable programming at the University's basketball arena during the lunch hour. Sisco lacks standing to pursue this claim.

As to his student news broadcast claim, Sisco confuses standing with mootness and relies entirely on caselaw analyzing the potential *mootness* of a plaintiff's claims stemming from a defendant's voluntary cessation of an allegedly discriminatory practice *after the plaintiff's filing*

7

*of a lawsuit*.[5] The University's argument is not that his claims were mooted by some post-litigation conduct, *but that Sisco lacked standing to pursue the claim at the time he filed his complaint. See*, e.g., *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (noting that aside from certain exceptions, "[g]enerally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot."); *Uptown Grill, LLC v. Shwartz*, 2021 U.S. Dist. LEXIS 15102, *38 (E.D. La. Jan. 27, 2021) (observing that "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.") (internal quotations omitted). Sisco lacks standing as to his NewsWatch claim, which his Complaint concedes was captioned long before he filed this lawsuit.

Finally, in support of his requests for the court to require the University to "prevent similar occurrences in the future" and to "put into place policies and training to prevent future violations," Sisco asserts, based on two out-of-circuit district court opinions, that he need not plausibly plead standing as to each claim because "it is far too early for that." Pl.'s Resp. p. 20. He ignores the Fifth Circuit's admonition that "a plaintiff must demonstrate standing for each claim he seeks to press and have standing separately for each form of relief sought," along with the well-settled principle that "plaintiffs must establish they have standing to sue" as a "threshold inquiry to adjudication." *See Latitude Sols. Inc. v. DeJoria*, 922 F.3d 690, 695 (5th Cir. 2019) (standing for each claim and each form of relief); *McNeal v. Louisiana Dep't of Publ. Safety and*

---

[5] *See* Pl.'s Resp. p. 25, citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (disputed ordinance revised *while case was pending before court of appeals*); *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 189 (2000) (Court elaborated on differences between standing and mootness, noting, "**by the time mootness is an issue, the case has been brought and litigated, often (as here) for years**.") (emphasis added); *Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 387 (4th Cir. 2011); *United States v. W. T. Grant Co.*, 345 U.S. 629, 630 (1953) (board member resigned *after litigation was commenced*); *Innes v. Bd. of Regents of the Univ. Sys. of Maryland*, 121 F. Supp. 3d 504, 510 (D. Md. 2015) (university installed ribbon board *after summary judgment briefing*).

*Corr.*, 2021 U.S. Dist. LEXIS 20045, *17 (M.D. LA. Feb. 2, 2021) (holding plaintiff failed to plead standing based on allegations of past injury coupled with requested injunctive relief that would not benefit him). As a former student, much of his requested injunctive relief will not benefit him or redress his claimed injuries. Sisco lacks standing to pursue such relief, and no amount of discovery will alter that result.

> ### 5. The University has not waived its sovereign immunity as to Sisco's ADA claim merely because Sisco has asserted a parallel claim under the Rehab Act.

Sisco asks for outright denial of the University's Eleventh Amendment immunity, but a full reading of the cases he cites reveals that a plaintiff's mere inclusion of a parallel Rehab Act claim does not render the Eleventh Amendment moot for purposes of a joined ADA claim. To the contrary, those cases, at best, allow a Court to defer ruling on an Eleventh Amendment immunity argument until later in the case. Though Sisco claims to be mystified as to why the University asserted its constitutional entitlement to sovereign immunity, the Fifth Circuit has repeatedly stated that, except for architectural barrier cases, there may well be distinctions in proof between a plaintiff's ADA and Rehab Act claims, and the Eleventh Amendment may bar a plaintiff's ADA claim even if a plaintiff asserts a Rehab Act claim. At this stage, the Court may not deny the University's Eleventh Amendment immunity merely because Sisco also lodged a claim under the Rehab Act.

In *Shaikh v. Texas A&M University College of Medicine*, a case Sisco cites for his contention that Eleventh Amendment immunity must be denied merely because he asserts a Rehab Act claim, the Fifth Circuit did the exact opposite and **upheld the district court's dismissal of the plaintiff's ADA claim on Eleventh Amendment grounds despite finding that the plaintiff's Rehab Act claim could proceed**. 739 F. App'x 215, 225 (5th Cir. 2018). There, the Fifth Circuit found that the plaintiff had adequately stated a plausible claim for relief

under the Rehab Act, and then applied the three-part *Georgia* test to determine whether the Eleventh Amendment barred his parallel ADA claim. *Id*. at 224. The court found that the ADA claim was indeed barred by the university's Eleventh Amendment immunity because his allegations did not state a violation of the Fourteenth Amendment and he failed to argue that Congress' purported abrogation was nevertheless valid. *Id*. at 225.

In *Bennett-Nelson v. Louisiana Board of Regents* the Fifth Circuit considered whether Louisiana's sovereign immunity barred the plaintiff's claims "under the ADA and the Rehabilitation Act," as the district court had dismissed both. 431 F.3d 448, 450 (5th Cir. 2005). The Fifth Circuit easily found that by accepting federal funds the university had in fact waived its Eleventh Amendment sovereign immunity as to claims brought under the Rehabilitation Act and reversed the district court as to that claim. *Id*. at 453.

As to the ADA claim, the Fifth Circuit observed that the claim was based on the plaintiffs' contention that "they were excluded from participation in their classes precisely to the extent that they were not accommodated with interpreters or note takers." *Id*. at 455. The question was not whether denial of that accommodation was caused solely or only in part by the alleged animus of the defendants, but only whether the demanded accommodation was "in fact reasonable and therefore required." *Id*. The Fifth Circuit therefore found that it unnecessary to address Eleventh Amendment abrogation at the Rule 12 stage. *Id*. The court noted that **"[w]hile the standard of causation is not material in this appeal, we do not foreclose the possibility that, as discovery proceeds, it may become a disputed issue."** *Id*. at n. 13 (emphasis added).[6]

---

[6] Similarly, in *Hammond v. University of Southern Mississippi*, which Sisco also cites to avoid the Eleventh Amendment immunity argument, the district court declined to rule on the Eleventh Amendment immunity at the Rule 12 stage but left open the possibility that such immunity could bar plaintiff's ADA claim. 2018 U.S. Dist. LEXIS 193959 (S.D. Miss. Nov. 14, 2018). **Sisco's use of ellipses is telling**; he strategically deletes the court's use of "**presently**" from its statement that it "decline[d] to **presently** address whether Title II of the ADA constitutes a valid abrogation of sovereign immunity with respect to Plaintiff's ADA claim." *Compare* Pl.'s Resp. p. 5; *Hammond*, 2018 U.S. Dist. LEXIS at *8.

While these holdings show that a defendant's right to Eleventh Amendment immunity may sometimes require discovery, Mississippi federal courts have also held that a defendant may waive the defense by defending a case on the merits before asserting its immunity. In *Dansby-Giles v. Jackson State Univer*sity, for instance, 638 F. Supp. 2d 698, 702 (S.D. Miss. 2009), the plaintiff argued that the university had waived its Eleventh Amendment immunity by answering and then waiting "eight months" to file its Rule 12 motion to dismiss on such grounds. Here, the University immediately asserted its Eleventh Amendment immunity in response to Sisco's ADA claim because Sisco's allegations reveal that the distinction in causation standards is relevant to his claims. He claims the University violated the Rehab Act because it "discriminated against [him] **solely on the basis of his disability**," but he also claims the University violated the ADA because it "discriminated against [him] **on the basis of his disability**." Unlike the case in *Bennett-Nelson*, Sisco's complaint highlights the difference in causation standards.

Further, in *Bennett-Nelson*, the Fifth Circuit noted that plaintiff's complaint did not dispute "whether the denial of the accommodation that disability was caused solely or only in part by the animus of the defendants"; the sole issue was whether defendants were "liable simply by denying it." 431 F.3d at 455. Sisco, however, does not argue that the University is liable merely for allegedly failing to provide him a requested auxiliary aid. He claims that the University acted with deliberate indifference to his "disability related needs," that his professor's alleged "persistent failure to play captioned videos was a result of improper accessibility training," that the University's "practices or policies have a negative and disparate impact on people with hearing impairments," and that the actions of the University "were intentional and taken with deliberate indifference to Plaintiff's rights." Accordingly, Sisco's ADA claim implicates more than whether "the demanded accommodation [was] in fact reasonable and

11

therefore required," and the Court should not decline to consider the University's Eleventh Amendment sovereign immunity merely because he also asserts a claim under the Rehab Act.

### 6. Sisco fails to respond to the substance of the University's Eleventh Amendment argument.

Aside from arguing that the Court should outright deny Eleventh Amendment immunity because he has filed a Rehab Act claim, Sisco does little to respond to the University's immunity arguments. He does not engage in the three-part *Georgia* analysis, again incorrectly arguing that "every circuit court that has considered the question has held that Title II of the ADA validly abrogated the States' sovereign immunity the in the educational context." Pl.'s Resp. p. 5.

The Fifth Circuit, of course, did the opposite in *Shaikh v. Texas A&M University College of Medicine,* as it affirmed dismissal of a medical student's ADA claim **because it was barred by the university's Eleventh Amendment immunity**. 739 F. App'x 215, 225 (5th Cir. 2018). And while the Second Circuit thus far has "express[ed] no position as to the question of whether Congress has validly abrogated sovereign immunity in the context of discrimination in access to public education on the basis of disability," it has also instructed that district courts should, at a minimum, determine whether the three-part case-by-case test articulated by the Supreme Court in *United States v. Georgia* should be applied. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis*., 804 F.3d 178, 195 (2d Cir. 2015).

Sisco's invitation for the Court to follow a few out-of-circuit opinions and find that Title II abrogation is per se valid in educational cases also ignores the Fifth Circuit's holding that Congress' purported abrogation of sovereign immunity under Title II was invalid as a whole. *Reickenbacker v. Foster*, 274 F.3d 974, 983 (5th Cir. 2001). As the court recently explained in *Block v. Tex. Bd. of Law Examiners*, that holding was only constrained by the Supreme Court's subsequent ruling that Title II "*is* congruent and proportional—and *does* validly abrogate states'

12

sovereign immunity—in 'cases implicating the fundamental right of access to the courts.'" 952 F.3d 613, 617 (5th Cir. 2020) (emphasis in original) (citing *Tennessee v. Lane*, 541 U.S. 509, 533 (2004)).

Before the Fifth Circuit had occasion to determine whether "*Reickenbacker's* holding remains valid in cases beyond that specific purview," or in cases that do not implicate the fundamental right of access to the courts, the Supreme Court "changed the Title II abrogation landscape a second time with *United States v. Georgia*," where it "established a three-part test for determining whether Title II validly abrogates states' sovereign immunity," which must be applied on a "claim-by-claim basis." *Id*. Under that test, which Sisco avoids, the court must ascertain 1) which aspects of the State's alleged conduct violated Title II, 2) to what extent such misconduct also violated the Fourteenth Amendment, and 3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation is nevertheless valid. *Id*.

Sisco has failed to address *Georgia* and has not argued that the University's alleged conduct violated the Fourteenth Amendment or that Congress's purported abrogation was nevertheless valid. As in *Shaikh*, the Court should find that Sisco has conceded the University's entitlement to Eleventh Amendment immunity by failing even to apply the three-pronged analysis of *Georgia*.

This, the 3rd day of August, 2021.        Respectfully submitted,

UNIVERSITY OF MISSISSIPPI
AND CHANCELLOR GLENN BOYCE

*/s/ J. Andrew Mauldin*
POPE S. MALLETTE. (MB NO. 9836)
J. ANDREW MAULDIN (MB NO. 104227)
ATTORNEYS FOR DEFENDANTS

OF COUNSEL:

MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035
Email:  pmallette@mayomallette.com
          dmauldin@mayomallette.com