IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**JOSHUA SISCO**   **PLAINTIFF**

V.   **NO. 3:21-CV-59-DMB-RP**

**UNIVERSITY OF MISSISSIPPI, and**
**GLENN BOYCE**   **DEFENDANTS**

## MEMORANDUM OPINION

Joshua Sisco, a deaf former student of the University of Mississippi, sued the University and its chancellor under the Americans with Disabilities Act and the Rehabilitation Act alleging they refused to make the University's videos, programs, and televisions accessible to people with hearing impairments. The defendants have moved to dismiss Sisco's disability discrimination claims for lack of subject matter jurisdiction or failure to state a claim. For the reasons explained below, dismissal will be granted in part and denied in part.

## I
## Procedural History

On March 19, 2021, Joshua Sisco filed a complaint in the United States District Court for the Northern District of Mississippi against the University of Mississippi and Glenn Boyce, the University's chancellor, in his official capacity. Doc. #1. Sisco, who is deaf, alleges the University's failure to provide captioning on various videos played in his class, programs produced by the University, and the University's televisions in certain areas of the campus, amounts to disability discrimination under both Section 504 of the Rehabilitation Act and the Americans with Disabilities Act ("ADA"). *Id.* at 1–2. Sisco seeks "declaratory relief, injunctive relief, equitable relief, and monetary damages." *Id.* at 11–12.

The defendants filed a motion to dismiss the complaint on June 7, 2021. Doc. #10. Two weeks later, on June 21, 2021, Sisco filed an amended complaint asserting the same claims against the same defendants. Doc. #14. The same day, Sisco filed a "Motion to Deny Defendant's [sic] Motion to Dismiss as Moot." Doc. #15.

On July 6, 2021, the defendants filed a motion to dismiss the amended complaint "pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6),"[1] arguing that Sisco "either lacks standing to pursue his requested relief, his claims are barred by the Eleventh Amendment, they fail to state any plausible claim for relief, or they require administrative exhaustion." Doc. #17 at 3–4. That day, the defendants responded to Sisco's motion indicating that they did "not object to the Court considering the merits only of their Motion to Dismiss Plaintiff's First Amended Complaint." Doc. #18 at 2. Accordingly, the Court denied the defendants' motion to dismiss the original complaint as moot. Doc. #19.

## II
## Standard of Review

Motions under Rule 12(b)(1) challenge a court's subject matter jurisdiction. "In assessing whether there is jurisdiction, courts may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Joiner v. United States*, 955 F.3d 399, 403 (5th Cir. 2020).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must prove the plaintiff's grounds for entitlement to relief—including factual allegations in a complaint that when assumed to be true raise a right to relief above the speculative

---

[1] Doc. #16 at 1. The motion is fully briefed. Docs. #17, #20, #23.

2

level." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021) (internal quotation marks omitted). The court must "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff. But [the court] do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* at 306–07 (cleaned up).

### III
### Factual Allegations

Sisco was diagnosed "at a young age with profound hearing loss." Doc. #14 at 2. He was raised by his mother, who is also deaf, and his "first language is American Sign Language (ASL)." *Id.*

Sisco attended the University as an undergraduate between 2015 and 2020, originally as an education major and later as a history major with an education minor. *Id.* at 3. He "has been a diehard fan of Ole Miss athletics since 2012, particularly of Ole Miss football" and attended both football games and basketball games prior to the COVID-19 pandemic. *Id.*

The University "has the full capability of adding captions to any and all video content, including videos it uploads to social media or videos that are to be displayed in a classroom setting" and "of enabling captions on television sets for TV programming produced and provided by third parties." *Id.* at 3–4. Despite this capability, "[d]uring … Sisco's time at [the University], the [U]niversity consistently failed to make many of its programs accessible to people with hearing impairments." *Id.* at 4. Specifically, "[v]ery few of the videos posted to [the University's] official social media accounts are captioned" and "the social media accounts associated with [University athletics] feature videos that are rarely, if ever, captioned." *Id.* And "'The Season,' a reality show that shows behind-the-scenes footage of [the University's] football team, basketball team, and baseball team" and "is featured on [the University's] various social media pages," is not captioned,

3

preventing Sisco from "follow[ing] along with the series." *Id.* at 5. Similarly, a motivational video narrated by Sisco's friend was not captioned. *Id.* Sisco "repeatedly complained to [the University] about the lack of captioning for [its] social media videos, but the problem was never addressed." *Id.*

Additionally, NewsWatch, a "student-run TV news station" "produced by [University] students under the supervision of [University] faculty," is aired on the University's cable system, a local cable TV channel, the NewsWatch website, and social media. *Id.* at 6–7. But "[d]espite … Sisco's repeated complaints to [the University], NewsWatch was not captioned for the vast majority of [his] time as a student." *Id.*

Furthermore, inside the Pavilion, the University's basketball arena which includes a "food court area where students [including Sisco] often eat lunch," "TVs were generally not captioned, so [Sisco] could not understand what was being said." *Id.* at 5. "After several complaints, [University] staff finally enabled the captions, but it lasted only for about a week." *Id.* at 6. And the TV in the Pod, "a common area within [the University's] Education Department," played "videos of students announcing important dates and events" without captioning such that Sisco "could not understand what was being said." *Id.* "Sisco complained repeatedly to Student Disability Services, to no avail." *Id.*

During the 2019 spring semester, Sisco enrolled in a Chinese history class taught by Dr. Joshua Howard. *Id.* at 7. "Before the semester began, Student Disability Services instructed Dr. Howard that, because there was a deaf student in the class, he needed to obtain captions for any videos played in class." *Id.* at 8. As long as Howard provided the video to Student Disability Services "with sufficient advanced notice, the department could caption the video for him." *Id.* However, Howard played uncaptioned videos in class on three separate occasions and also played

4

an uncaptioned video "for an after-hours extra-credit opportunity." *Id.* After each such occasion, Sisco complained to Student Disability Services, who then contacted Howard and admonished him. *Id.* Nevertheless, "Howard tested material from these videos on quizzes and exams" and provided extra credit for students who wrote a paper on the extra credit video. *Id.* at 7–8. Because Sisco "missed so much information in class" due to the lack of captioning, "he earned a C in the course." *Id.* at 9. This "brought down his GPA, which in turn harmed his prospects of obtaining a good job and/or earning admission into a competitive graduate program." *Id.*

Between 2017 and 2019, Sisco met with Becki Bressler, the University's Director of Equal Opportunity and Regulatory Compliance, on three separate occasions. *Id.* at 9. Each time, Corey Blount, "an assistant director and ASL translator for Student Disability Services," was present. *Id.* At the first meeting in 2017, Sisco voiced his concerns over the lack of captioning on social media videos, NewsWatch, and the TV in the Pod. *Id.* at 9–10. After the issues were not addressed, he voiced the same concerns at a second meeting in 2018. *Id.* at 10. On April 1, 2019, during a third meeting with Bressler, he raised the same concerns but also informed Bressler of the lack of captioning on TVs in the Pavilion and the videos played in his Chinese history class. *Id.* After this meeting, "Howard finally began captioning his videos in class, but there was only a short period of time left in the semester." *Id.*

"[F]rustrated that his other concerns were not being addressed," Sisco "filed a complaint with the Department of Education's Office of Civil Rights (OCR) on April 9, 2019." *Id.* Afterwards, "NewsWatch finally began captioning its programming." *Id.* But because "OCR did not obtain any other relief" for him, Sisco filed a second OCR complaint on January 8, 2020, "raising substantially the same concerns as his first OCR complaint." *Id.* Sisco subsequently

5

"withdrew his OCR complaint after obtaining private counsel in October 2020" because of OCR's "substantial delay in investigating his claims." *Id.* at 11.

"After graduating in 2020, … Sisco began a graduate program at [the University] called 'Teach Mississippi Institute'" but withdrew from the program the next year. *Id.* at 3. However, he "still plan[ned] to attend games during the 2021 football season." *Id.*

## IV
## Standing

Based on the University's alleged discrimination, Sisco seeks, among other relief, "an injunction directing that Defendants and their officers, directors, agents, employees and successors, and all other persons in active concert or participation with Defendants, take all affirmative steps necessary to remedy the illegal, discriminatory conduct alleged herein and to prevent similar occurrences in the future." Doc. #14 at 12. The defendants argue "Sisco lacks standing to pursue many of his claims for injunctive relief" but do not challenge his standing with respect to any other relief sought. Doc. #17 at 1.

A plaintiff must have Article III standing to invoke a federal court's subject matter jurisdiction. *Abraugh v. Altimus*, __ F.4th __, No. 21-30205, 2022 WL 433694, at *3–4 (5th Cir. Feb. 14, 2022). To establish Article III standing, a plaintiff must allege (1) an injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by the court. *Id.* at *2. For injunctive relief, a plaintiff must also "demonstrate either continuing harm or a real and immediate threat of repeated injury in the future" that is "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 342 (5th Cir. 2012). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Id.* at 344 (alterations omitted). "[A] plaintiff must demonstrate standing

6

for each claim he seeks to press and for each form of relief that is sought." *Daves v. Dallas Cnty.*, 22 F.4th 522, 542 (5th Cir. 2022). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice …." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The defendants argue that because Sisco is no longer a student, he "lacks standing to pursue any relief as to his TV captioning [and NewsWatch] claims" and although they "concede he has standing to pursue at least *some* relief" related to his videos in his Chinese history class and on social media, "he lacks standing to pursue relief that will not directly benefit him, and his requests for injunctive and/or declaratory relief to 'prevent similar occurrences in the future' and/or 'put in place policies and training to prevent future violations' will not directly benefit him as a former student." Doc. #17 at 7–8. Sisco responds that because the defendants "concede[] he has standing to pursue at least some injunctive relief with respect to his Chinese history class and … social media videos," "the Court should stop there and reject any attempt to parse out *which types* of injunctive relief the Court may ultimately be inclined to award." Doc. #20 at 20 (cleaned up). In reply, the defendants argue Sisco cannot establish standing as to each claim because "[a]s a former student, much of his requested injunctive relief will not benefit him or redress his claimed injuries." Doc. #23 at 6–9.

To the extent Sisco seeks injunctive relief with respect to captioning of the televisions in the Pod, he fails to allege any threat of future injury and thus fails to demonstrate standing to pursue *injunctive* relief with respect to such claims. Similarly, because he recognizes that NewsWatch is now captioned, he cannot establish standing to pursue injunctive relief in that respect. Accordingly, Sisco's request for injunctive relief based on televisions in the Pod and NewsWatch will be dismissed for lack of standing.

However, consistent with the defendants' concession, Sisco has standing to pursue his injunctive relief claims with respect to social media videos and his history class. And although the defendants argue Sisco "fails to allege that he intends to return to the Pavilion to actually watch the basketball team,"[2] Sisco's complaint alleges he "attends many of the games and has friends who are managers for the team." Doc. #14 at 3. As Sisco has alleged he still attends basketball games, he has standing to pursue his claims related to the televisions in the Pavilion. Given Sisco is no longer a student at the University and has not brought his claims as a representative of those similarly situated, any injunctive relief ultimately awarded will be narrowly tailored to address his own potential future injury. *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 478 n.39 (5th Cir. 2020).

## V
## Eleventh Amendment Immunity

The defendants argue the Court lacks jurisdiction over Sisco's ADA claims because they are entitled to Eleventh Amendment sovereign immunity.[3] Doc. #17 at 10.

"The purpose of the Eleventh Amendment is to recognize state sovereignty by shielding states, absent their consent or an explicit act of Congress, from money judgments assessed in federal court." *Stratta v. Roe*, 961 F.3d 340, 350 (5th Cir. 2020). "Pursuant to the Eleventh Amendment, a state's sovereign immunity in federal court extends to private suits against state agencies, state departments, and other arms of the state." *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 273 (5th Cir. 2020). As a result of this immunity, "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless

---

[2] Doc. #17 at 7.

[3] The defendants note that "Sisco's parallel Rehab Act claim does not implicate the University's Eleventh Amendment immunity." Doc. #17 at 9.

that state has waived its sovereign immunity or Congress has clearly abrogated it." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015). Additionally, under *Ex parte Young*,[4] a plaintiff may "sue a state official in his official capacity as long as the lawsuit seeks prospective relief to redress an ongoing violation of federal law." *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020). To fall within this exception, "[t]he suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). When determining whether the *Ex parte Young* exception applies, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (cleaned up).

### A. The University

The University is clearly an arm of the state[5] and Mississippi has not waived its sovereign immunity.[6] Thus, for this Court to have jurisdiction over Sisco's ADA claims against the University, Congress must have validly abrogated the defendants' sovereign immunity.

Title II of the ADA provides that "no qualified individual with a disability shall by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to any discrimination by any such entity." 42 U.S.C. § 12132.

> In *United States v. Georgia*, the Supreme Court established a three-part test for addressing whether Title II validly abrogates state sovereign immunity in a given case. A court should consider "which aspects of the State's alleged conduct violated Title II" and then determine "to what extent such misconduct also violated the

---

[4] 209 U.S. 123 (1908).

[5] *See McNair v. Mississippi*, 43 F. Supp. 3d 679, 686–87 (N.D. Miss. 2014) (collecting cases).

[6] *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020) (citing Miss. Code Ann. § 11-46-5(4)).

9

> Fourteenth Amendment." If the State's conduct violated both Title II and the Fourteenth Amendment, Title II validly abrogates state sovereign immunity. If the State's conduct violated Title II but did not violate the Fourteenth Amendment, the court must then determine "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."

*Hale v. King*, 642 F.3d 492, 497–98 (5th Cir. 2011) (footnotes omitted).

The defendants argue Sisco has both failed to state a plausible disability discrimination claim under Title II and failed to allege a violation of the Fourteenth Amendment such that "Congress' attempted abrogation" is not valid and Sisco's "ADA claims are therefore barred by the Eleventh Amendment." Doc. #17 at 8–20. Sisco responds that "States receiving federal funds under Section 504 of the Rehabilitation Act waive their Eleventh Amendment immunity, rendering wholly irrelevant any immunity questions under the [ADA]." Doc. #20 at 3. The defendants reply that "a plaintiff's mere inclusion of a parallel Rehab Act claim does not render the Eleventh Amendment moot for purposes of a joined ADA claim" and argue Sisco did "little to respond to the University's immunity arguments." Doc. #23 at 9, 12.

The Court finds unpersuasive Sisco's argument that the University's admission that sovereign immunity is not implicated by his Rehabilitation Act claim renders sovereign immunity with respect to the ADA claim "wholly irrelevant." In *Pace v. Bogalusa City School Board*, after holding "that Louisiana waived its Eleventh Amendment immunity with respect to the Rehabilitation Act," the Fifth Circuit declined to address "whether Title II of the ADA abrogates Eleventh Amendment immunity" because the Supreme Court had not recognized "access to public education or freedom from disability discrimination in education to be fundamental rights" and addressing the plaintiff's Title II claims was "unnecessary … given that its rights and remedies are identical to and duplicative of those provided in § 504." 403 F.3d 272, 287 (5th Cir. 2005). However, in *Shaikh v. Texas A&M University College of Medicine*, the Fifth Circuit reversed the

10

district court's dismissal of the plaintiff's § 504 claim but affirmed the dismissal of his ADA claim under Rule 12(b)(1) because he failed to satisfy the second and third parts of the *Georgia* test. 739 F. App'x 215, 224–25 (5th Cir. 2018). Thus, while it appears the Fifth Circuit at times has declined to address whether states are entitled to sovereign immunity on ADA claims when they have waived immunity for parallel § 504 claims, it has not held that a waiver of immunity for the § 504 claims automatically gives a court jurisdiction over parallel ADA claims.

Thus, in accordance with *Georgia*, the Court must determine (1) whether Sisco alleges a violation of Title II and (2) whether the conduct also violated the Fourteenth Amendment. If Sisco does not allege a violation of the Fourteenth Amendment, the Court must then consider "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Hale*, 642 F.3d at 498.

### 1. Title II

A court should apply a Rule 12(b)(6) standard to determine whether a plaintiff has stated a claim for relief under Title II. *See id.*

> A plaintiff states a claim for relief under Title II if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.

*Id.* at 499.

The defendants argue Sisco's allegations regarding his history class are insufficient to state a claim because "he does not allege that the University did not provide any auxiliary aid, such as a qualified interpreter, a note taker, or other written materials" and the denial of a specific requested auxiliary aid—captioning—"is not sufficient to state a claim under the ADA." Doc. #17 at 18. However, the cases the defendants rely on for this argument were decided on summary judgment,

not on a motion to dismiss. *See id.* at 17–18; *Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012) (affirming summary judgment where record showed defendants "did not provide [plaintiff] his requested accommodations" but "existing accommodations were more than sufficient"); *Wilson v. Tex. Dep't of Crim. Just.*, No. 6:11-cv-245, 2012 WL 4121130, at *8 (E.D. Tex. Aug. 16, 2012) (recommending granting summary judgment because evidence showed "[r]easonable accommodations ha[d] been made" despite the accommodations not being those requested). Sisco responds that he "does not need to allege every conceivable accommodation that the university *didn't* provide." Doc. #20 at 16–17.

The Court agrees with Sisco. Sisco has satisfied his burden at this stage in the proceedings because his complaint alleges he requested a reasonable accommodation and his request was denied. *See D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010) (plaintiff stated a claim under ADA and § 504 when "it is alleged that a school district has *refused* to provide reasonable accommodations for the handicapped plaintiff"); *Strauss v. Bd. of Supervisors for Univ. of La. Sys.*, No. 6:17-cv-235, 2017 WL 4864496, at *4 (W.D. La. Oct. 6, 2017) (complaint stated a claim under ADA where plaintiff alleged he was denied requested accommodation and accommodations provided were inadequate), *report and recommendation adopted sub nom. Strauss v. Univ. of La. Sys. Bd. of Supervisors*, No. 6:17-cv-235, 2017 WL 4847526 (W.D. La. Oct. 26, 2017).

Both parties present arguments as to whether Title II applies to Sisco's allegations regarding videos posted to social media. *See* Doc. #17 at 11–12; Doc. #20 at 7. Because the Court must read the complaint as a whole[7] and Sisco alleges other facts in support of his claims beyond

---

[7] *See Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011).

those involving social media posts, the Court declines to address whether Title II applies to social media posts at this stage in the proceedings.

### 2. Fourteenth Amendment

Because Sisco has stated a claim under Title II, under *Georgia*, the Court must now consider whether the misconduct alleged also violates the Fourteenth Amendment. The defendants argue Sisco "has not alleged that the University's purported decisions lack a rational relationship to any legitimate governmental purpose, and the Fifth Circuit has declined to find college enrollment (much less captioning for television or social media platforms) a fundamental right protected by the Due Process Clause." Doc. #17 at 19. Although Sisco argues "every circuit court that has considered the question has held that Title II of the ADA validly abrogated the States' sovereign immunity in the educational context,"[8] the Fifth Circuit has instructed that courts must determine whether Title II validly abrogates sovereign immunity on a "claim-by-claim basis." *Block v. Tex. Bd. of L. Exam'rs*, 952 F.3d 613, 618 (5th Cir. 2020).

Sisco fails to further address the Fourteenth Amendment in his response or whether the abrogation of the University's sovereign immunity is otherwise valid with respect to his claims. Accordingly, he has failed to show that the University is not entitled to sovereign immunity under *Georgia* and this Court is without jurisdiction over his ADA claim against the University. *See Shaikh*, 739 F. App'x at 224–25 (affirming dismissal where plaintiff "failed to brief any meaningful argument that Congress's purported abrogation is 'nevertheless valid' in this case and … therefore waived the issue"). Sisco's ADA claim against the University will be dismissed without prejudice. *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (Fifth Circuit precedent makes "clear that a jurisdictional dismissal must be *without prejudice*").

---

[8] Doc. #20 at 5.

### B. Boyce

In their initial brief in support of dismissal, the defendants state: "Sisco also asserts his claims against Chancellor Glenn Boyce in his official capacity as duplicative claims against the University itself." Doc. #17 at 1 n.1. They do not otherwise present any argument as to why the claims specifically against Boyce should be dismissed. In response, Sisco cites *Ex parte Young* and argues "Eleventh Amendment immunity bars only suits for *damages* and has no application where a party seeks injunctive relief against a state officer in his official capacity," as he does against Boyce here. Doc. #20 at 3. The defendants do not address *Ex parte Young* in their reply. Because Sisco brings his ADA claims against Boyce in his official capacity, seeks prospective relief in the form of an injunction, has standing to pursue such relief with respect to certain claims as discussed above, and, taking the complaint as a whole, has alleged an ongoing violation of federal law, the *Ex parte Young* exception applies and Boyce is not entitled to sovereign immunity. *See Williams ex rel. J.E.*, 954 F.3d at 736.

## VI
## Exhaustion

The defendants argue this Court lacks subject matter jurisdiction over Sisco's claims based on NewsWatch and The Season because both televised programs "implicate the Twenty-First Century Communications and Video Accessibility Act of 2010 (the 'CVAA')," which requires exhaustion of administrative remedies before filing suit. Doc. #17 at 21. Sisco responds his "claims are not based on televised content … because his complaint alleges that he tried to watch 'The Season' and NewsWatch on *Facebook*, not on TV." Doc. #20 at 18. The defendants argue this fact is immaterial and does not change the exhaustion requirement. Doc. #23 at 6.

As the defendants note in their reply, "[n]o court in this circuit appears to have considered whether the [CVAA] requires a plaintiff to administratively exhaust a closed-captioning complaint

14

before proceeding with an action under the ADA or Rehab Act." *Id.* at 5. Rather, the defendants argue *Sierra v. School Board of Broward County*[9] is persuasive. *Id.*

In *Sierra*, the deaf plaintiff alleged ADA and Rehabilitation Act claims based on the defendant school board's failure to provide closed captioning on video streaming of meetings. 2017 WL 1423956, at *1. The defendant moved to dismiss for failure to exhaust under the CVAA. *Id.* The court explained that the "regulations [of the Federal Communications Commission ("FCC")] impose closed-captioning requirements on all nonexempt full-length video programming delivered using Internet protocol if the programming is published or exhibited on television in the United States with captions" and "the FCC is vested with exclusive jurisdiction with respect to any complaint under [47 U.S.C. § 613]." *Id.* at *2 (cleaned up). If the plaintiff's claims fell "within the CVAA's scope," the court could enforce the administrative complaint process, requiring the plaintiff to file a complaint with the FCC before pursuing his claims. *Id.* at *2–3. In addressing the defendant's factual attack on jurisdiction,[10] because an affidavit revealed the meetings were broadcasted on television, the court found the plaintiff's claims fell under the CVAA and dismissed the claims for failure to exhaust. *Id.* at *3–5.

However, the Eleventh Circuit subsequently rejected this argument in a separate case involving the same plaintiff. *See Sierra v. City of Hallandale Beach*, 904 F.3d 1343, 1349–50 (11th Cir. 2018). There, the Eleventh Circuit specified that the FCC does not have exclusive jurisdiction "over *issues* concerning closed captioning" but rather 47 U.S.C. § 613(j) gives the FCC exclusive jurisdiction over "any complaint *under th[at] section*." *Id.* at 1348–49. Because

---

[9] No. 16-cv-63021, 2017 WL 1423956 (S.D. Fla. Apr. 20, 2017).

[10] An attack on jurisdiction is "factual" where evidentiary materials are submitted in support of the motion to dismiss. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). Because the defendants here rely only on the pleadings, rather than evidence, the attack is facial. *See id.*

the plaintiff had brought his claims under the Rehabilitation Act and the ADA—and not under § 613(j)—there was no exhaustion requirement. *Id.* Following this reasoning, because Sisco has brought his claims under the Rehabilitation Act and the ADA, the exhaustion requirement does not apply.

## VII
## Rehabilitation Act

The defendants argue Sisco's Rehabilitation Act claim fails because "courts within the Fifth Circuit have routinely subjected claims under either [the Rehabilitation Act or the ADA] to identical analysis" and "Sisco has not stated a plausible discrimination claim under the ADA." Doc. #17 at 21. As discussed above, Sisco has stated a claim for relief under the ADA. Because "[c]laims brought under § 504 or the ADA, or both, are subject to the same analysis," Sisco has also stated a claim with respect to his Rehabilitation Act claim. *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 416 (5th Cir. 2021).

## VIII
## Conclusion

The defendants' motion to dismiss [16] is **GRANTED in Part and DENIED in Part**. It is GRANTED to the extent it seeks dismissal of Sisco's claims for injunctive relief related to the televisions in the Pod and the captioning of NewsWatch and his ADA claim against the University. It is DENIED in all other respects. Sisco's injunctive relief claims related to the Pod and NewsWatch and his ADA claim against the University are **DISMISSED without prejudice**.

**SO ORDERED**, this 4th day of March, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**