# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

JOSHUA SISCO,

      Plaintiff,

                                       Case No 3:21-cv-059-DMB-RP

v.

UNIVERSITY OF MISSISSIPPI, *et al*.

      Defendants.

### <u>MEMORANDUM SUPPORTING MOTION TO RECONSIDER</u>

Plaintiff Joshua Sisco respectfully requests that this Court reconsider its ruling that the Americans with Disabilities does not abrogate a State's Eleventh Amendment immunity in the educational context. The Court dismissed his ADA claims against the University of Mississippi without prejudice. Doc. 24 at 13. But this Court may reconsider this ruling under Rule 54(b).

## I.      Legal Standard

"Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[] at any time' 'any order or other decision ... [that] does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (internal quotation marks omitted). Critically, Rule 54(b) is "more flexible" than Rule 59(e) and "reflect[s] the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 336–37 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)). Whether to grant Rule 54(b) relief is within the trial court's discretion. *Id.* at 329. But a court "abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.*

## II.     Argument

Mr. Sisco is entitled to relief under Rule 54(b) because this Court's ruling was premised on an "erroneous view of the law."  *See Austin*, 864 F.3d at 329.   In particular, despite acknowledging that "every circuit court that has considered the question has held that Title II of the ADA validly abrogated the States' sovereign immunity in the educational context," the Court nonetheless held that abrogation must be decided "on a 'claim-by-claim basis.'"  Doc. 24 at 13 (quoting *Block v. Tex. Bd. of L. Exam'rs*, 952 F.3d 613, 618 (5th Cir. 2020)).  That is incorrect. To be sure, courts must consider, on a "claim-by-claim basis," whether a complaint alleges a violation Title II and, if so, whether the alleged conduct also violates the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 159 (2006).  If the answer to both is "yes," then the defendant does not enjoy immunity.  *Id.*  But when as, here, a plaintiff alleges conduct that violates Title II but *not* the Fourteenth Amendment, courts consider whether the abrogation is nevertheless valid "as to that *class of conduct*."  *Id.* (emphasis added).

A "class" is a "group of people, things, qualities, or activities that have common characteristics or attributes."  CLASS, Black's Law Dictionary (11th ed. 2019).  As such, whether Title II abrogates a certain "class of conduct" is not a question that courts can analyze on a "claim-by-claim" basis.  *See id.*  Instead, the "class" inquiry is considered at a high level of generality. For example, the Supreme Court has held that Title II abrogated immunity as to the "class of cases implicating the accessibility of judicial services."  *Tennessee v. Lane*, 541 U.S. 509, 530–31 (2004).  This approach makes sense, because Congress does not legislate on a "claim-by-claim" basis.  It would be strange, for example, if Congress abrogated immunity insofar as a Title II claim alleges a failure to caption videos, but not for a claim alleging a failure to provide an ASL interpreter.

2

The Fifth Circuit confirmed this principle in a decision released after the motion-to-dismiss briefing was completed, explaining that a statute can "validly abrogate[] sovereign immunity for *all* claims." *See Canada Hockey, L.L.C. v. Texas A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172, at *7 (5th Cir. Feb. 14, 2022) (emphasis in original). This Court relied on *Block*, but the Fifth Circuit did not reach the abrogation question in *Block*, because the complaint failed to allege a violation of Title II. 952 F.3d at 618. By contrast, this Court held that Sisco *does* allege conduct violating Title II. Doc. 24 at 11–12. But the Court did not proceed to the next step— whether Title II abrogates immunity in the higher-education context—based on its mistaken belief that this step is governed by a "claim-by-claim approach." *Id.* Sisco argued that Title II validly abrogated "all claims" for this "class of conduct"—denying accommodations in the higher education context, *see Block*, 952 F.3d at 617 n.11, citing four circuit decisions holding just that. Doc. 20 at 5–6. These decisions did not consider abrogation on a "claim-by-claim" basis, but instead held that Title II validly abrogates sovereign immunity for "*all* claims" related to higher education. *See Canada Hockey*, 2022 WL 445172, at *7.

Specifically, the First Circuit held that Title II validly abrogated State immunity "as it applies to the *class of cases* implicating the right of access to public education." *See Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006) (emphasis added). And the Fourth Circuit has held that "Title II of the ADA is valid § 5 legislation, at least as it applies to public higher education." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 490 (4th Cir. 2005). The Third Circuit held that Title II abrogates immunity with regard to "access to [public] education." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 555 (3d Cir. 2007). And the Eleventh Circuit has done the same. *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005) ("The relief available under Title II of the ADA is congruent and proportional

to the injury and the means adopted to remedy the injury," because "[d]iscrimination against disabled students in education affects disabled persons' future ability to exercise and participate in the most basic rights and responsibilities of citizenship.").[1]

To reach this conclusion, all four circuits identified a "history and pattern" of discrimination against students with disabilities. *Constantine*, 411 F.3d at 488; *see also Fla. Int'l Univ.*, 405 F.3d at 958 ("[T]he unequal treatment of disabled persons in the administration of" education has a long history."); *Toledo*, 454 F.3d at 38–39 ("The thirty years preceding the enactment of the ADA evidence a widespread pattern of states unconstitutionally excluding disabled children from public education."); *Bowers*, 475 F.3d at 555 ("[O]ur national history in educating students with disabilities leaves much to be desired."). And all four circuits found that there was "a congruence and proportionality between the injury to be prevented or remedied" in higher education and "the means adopted to that end" under Title II. *See City of Boerne v. Flores*, 521 U.S. 507, 520 (1997). In particular, these circuits explained that Title II already contains built-in limitations that make it a proportional response.

As the First Circuit ably explained, "the obligations imposed by Title II are limited in several ways that minimize the compliance costs imposed on states." *Toledo v. Sanchez*, 454 F.3d at 39–40. First, "States need not make structural changes to existing physical facilities if other methods can make the program or service accessible." *Id.* (citing 28 C.F.R. § 35.150(b) (2006)). Second, "Title II requires only 'reasonable modifications' to programs and facilities and 'in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in

---

[1] The Second Circuit has declined to weigh in. *Dean v. Univ. at Buffalo Sch. of Med.*, 804 F.3d 178, 194 (2d Cir. 2015) ("We express no position as to the question of whether Congress has validly abrogated sovereign immunity in the context of discrimination in access to public education on the basis of disability.").

the nature of the service.'" *Id.* (quoting *Lane*, 541 U.S. at 532). Third, a State "may take into account its limited resources as well as the needs of other students with disabilities in determining what sorts of reasonable modifications are appropriate under Title II." *Id.* And "[f]inally, the ADA does not require public schools and universities to accommodate disabled students if the accommodation would substantially alter their programs or lower academic standards, and courts give due deference to the judgment of education officials on these matters." *Id.* at 39–40.

Notably, these obligations are less burdensome than those on State employers under Title I. As the Fourth Circuit explained, Title II's remedial measures "are likely less burdensome to the States than those employed in Title I," which requires States to "mak[e] existing facilities used by employees readily accessible to and usable by individuals with disabilities." *Constantine*, 411 F.3d at 490 (4th Cir. 2005) (quoting 42 U.S.C. §§ 12112(5)(B), 12111(9)). By contrast, "Title II imposes no such categorical requirement," and the "regulations specifically permit the States to avoid making structural modifications to existing facilities in several circumstances." *Id.* (citing 28 C.F.R. § 35.150(a)). Moreover, a State's "interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign [under Title II] to a significant one when it acts as employer" under Title I. *Id.* It is thus "more likely that disability discrimination in the context of a State's operation of public education programs will be unconstitutional than … in the context of public employment." *Id.*

In short, when a plaintiff alleges conduct that violates Title II but not the Fourteenth Amendment, the abrogation question is not decided with a fine-tooth comb on a "claim-by-claim basis." It is decided by looking at the "class of cases" that are implicated. *Lane*, 541 U.S. at 530–31. And at least four circuit courts have held that Title II has abrogated "*all* claims" related to higher education. *See Canada Hockey*, 2022 WL 445172, at *7.

If the Court declines to correct its error, it would become an outlier among district courts, which have almost uniformly held that Title II is a valid abrogation in the context of public education. *See, e.g.*, *Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475, 481 (N.D. Ohio 2007) ("Guided by the Supreme Court holdings in *Georgia* and *Lane,* as well as these decisions of the First and Third Circuits, this Court concludes Congress validly abrogated state sovereign immunity with respect to public higher education."); *W.H. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996, at *8 (M.D. Tenn. Jan. 20, 2016) ("The circuits that have considered this question post-*Georgia*, have reached the conclusion that abrogation is valid for such claims, even where there is no Fourteenth Amendment violation at issue."); *Montes v. Desert Cmty. Coll. Dist.*, 2016 WL 10566650, at *2 (C.D. Cal. Jan. 11, 2016) ("[E]very Circuit to address this issue has … held that Title II validly abrogates sovereign immunity in the context of public education."); *Unverferth v. Liberty Union High Sch. Dist.*, No. C-15-1721 EMC, 2015 WL 5012931, at *1 (N.D. Cal. Aug. 24, 2015) ("Those circuit courts that have addressed the issue of sovereign immunity in the public education context have all held in favor of abrogation."); *Jones v. Univ. of Memphis*, No. 215CV02148JPMCGC, 2016 WL 11496100, at *5 (W.D. Tenn. Sept. 9, 2016) ("[P]ost-*Georgia* case law in many circuits overwhelmingly suggests that Congress validly abrogated state sovereign immunity for ADA claims involving public universities."); *D.R. v. Michigan Dep't of Ed.*, No. 16-13694, 2017 WL 4348818, at *8 (E.D. Mich. Sept. 29, 2017) ("Defendants have offered no binding or persuasive authority in which a court has held that state immunity is not abrogated in the context of public education."); *Novak v. Bd. of Trustees of S. Illinois Univ.*, No. 12-CV-7-JPG, 2012 WL 5077649, at *8 (S.D. Ill. Oct. 18, 2012); *Turner v. Vincennes Univ.*, 2019 WL 8266875, at *7 (S.D. Ind. Mar. 29, 2019) ("The court agrees with the reasoning of the Fourth Circuit."); *Doherty v. Bice*, No. 18-CV-10898 (NSR), 2020 WL 5548790, at *9 (S.D.N.Y. Sept.

16, 2020) ("The Court finds that abrogation under Title II is a congruent and proportional response to the history of discrimination against the disabled in access to education."); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 326 (S.D.N.Y. 2007) ("I find … those [circuit] opinions persuasive and … conclude that abrogation under Title II is a congruent and proportional response to the history of discrimination against the disabled in access to education."); *Bearden v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 234 F. Supp. 3d 1148, 1153 (W.D. Okla. 2017) ("[A]s it applies to the class of cases implicating the right of access to public education, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment."); *Cunningham v. Univ. of New Mexico Bd. of Regents*, 779 F. Supp. 2d 1273, 1279 (D.N.M. 2011), *aff'd,* 531 F. App'x 909 (10th Cir. 2013).

Alternatively, the Court can simply vacate its abrogation ruling and reserve that question. Courts should avoid constitutional decisions whenever possible. *Mills v. Rogers*, 457 U.S. 291, 305 (1982) ("It is this Court's settled policy to avoid unnecessary decisions of constitutional issues."). To that end, Mr. Sisco argued that there was no need for this Court to address whether Title II validly abrogates Ole Miss's sovereign immunity. Doc. 20 at 5 (citing *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005), for the proposition that a court "need not address … the issue of abrogation under Title II of the ADA" when a public entity is subject to Section 504). If, however, the Court wishes to decide the question, Mr. Sisco respectfully requests that the Court follow the lead of every circuit that has faced it and hold that Title II abrogates the States' sovereign immunity in the context of public education.

## CONCLUSION

The Court should reconsider its abrogation ruling under Rule 54(b), because it was premised on an "erroneous view of the law." *See Austin*, 864 F.3d at 329.

Respectfully submitted,

May 11, 2022

 /s/ *Chris Edmunds*

Chris Edmunds, Counsel for Plaintiff
LBSA: 37670
Chris Edmunds Law Office
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com




 /s/*Mike  Farrell*

Mike Farrell
Miss. Bar # 5147
Mike Farrell, PLLC
Regions Plaza, Suite 1088
210 Capitol Street Jackson, MS 39201
601-948-8030 Tel
601-948-8032 Fax